```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

MAYA ZABAR,

                Plaintiff,              New York, N.Y.

           v.                           18 Civ. 6657 (PGG)

NEW YORK CITY DEPARTMENT OF
EDUCATION, et al.,

                Defendants.
------------------------------x
                                        November 29, 2018
                                        11:40 a.m.
Before:

                    HON. PAUL G. GARDEPHE,

                                        District Judge



                         APPEARANCES


GLASS & HOGROGIAN, LLP
     Attorneys for Plaintiff
BY:  BRYAN D. GLASS

ZACHARY W. CARTER
     Corporation Counsel for the City of New York
BY:  SAMANTHA P. TURETSKY
     Assistant Corporation Counsel
```

1             (Case called)
2             THE DEPUTY CLERK:  Is the plaintiff ready?
3             MR. GLASS:  Yes.
4             THE DEPUTY CLERK:  Please state your appearances.
5             MR. GLASS:  Good morning.  Bryan D. Glass from Glass &
6    Hogrogian, Zabar and I have Ms. Zabar here to my left.
7             THE DEPUTY CLERK:  Defendant ready?
8             MS. TURETSKY:  Yes.  Samantha Turetsky for defendants
9    through corporation counsel.
10            THE COURT:  Please, be seated.
11            This is an action brought under the Americans with
12   Disabilities Act, the State and City Human Rights Law, as well
13   as Section 1983.  I understand the plaintiff to be an English
14   teacher who worked at the High School of Art and Design in
15   Manhattan.  The plaintiff alleges that in the summer of 2016
16   she asked or began asking for certain accommodations due to
17   conditions of anxiety and depression and the plaintiff also
18   says she became a union representative at that time.
19            The plaintiff alleges that she suffered adverse action
20   after raising her request for an accommodation and after
21   becoming a union representative, and the adverse action she
22   cites are numerous disciplinary letters which she claims were
23   unfounded, as well as negative written evaluation reports,
24   numerous negative written evaluations, and also poor ratings,
25   ratings that she challenges as inaccurate.

On September 7, 2018, disciplinary charges were brought against the plaintiff. I understand those to still be pending, or at least they were pending as of the time of the complaint.

I have received a pre-motion letter from the defendants in which they seek leave to file a partial motion to dismiss and the defendants contend, in their pre-motion letter, that portions of plaintiff's claims are barred by the statute of limitations while others fail to state a claim.

I am going to tell you this morning what my reactions are to the proposed motion. That is why I have a pre-motion conference requirement. It is so that I have an opportunity to share with lawyers, before any papers are filed, my views of whether the proposed motion is likely to be productive or not.

So, I would begin with the statute of limitations arguments as they relate to plaintiff's claims under the Americans with Disability Act for denial of a reasonable accommodation, hostile work environment, and retaliation.

The defendants contend that these claims are time-barred to the extent they relate to acts or conduct that took place prior to May 19, 2017.

I will assume, for purposes of today's discussion, that defendants are correct about the date and correct about the assertion that conduct or acts that took place before then cannot provide a basis for liability. However, even assuming

IBT5zabC                              conference

1   that I were to rule in defendant's favor as to pre-May 19, 2017
2   conduct, there would be discovery about those matters because
3   they would constitute background evidence and, accordingly, I
4   don't see how a motion to dismiss as to pre May 19, 2017
5   conduct is going to advance the litigation in a significant
6   way.
7         If the case proceeds to summary judgment and the
8   parties cannot reach a stipulation as to whether pre-May 19,
9   2017 conduct provides a basis for liability, then I would be
10  called upon to resolve that issue.  But, from a practical
11  perspective, I don't see how a motion to dismiss as to pre-May
12  19, 2017 conduct is going to significantly advance resolution
13  of the parties' dispute.
14        With respect to claims brought under the State and
15  City Human Rights Laws as against the Board of Education and
16  Superintendent Rosales, the defendants argue that these claims
17  are subject to dismissal because the plaintiff did not file a
18  Notice of Claim as required under New York Education Law
19  Section 3813.
20        Is there a dispute about whether plaintiff filed the
21  required Notice of Claim, Mr. Glass?
22        MR. GLASS:  No, we didn't file in this case.
23        THE COURT:  So, accepting that as true, it seems to me
24  that those claims are in fact subject to dismissal and
25  plaintiff should consider whether they should be dropped at

1  this point given defendant's arguments about the Notice of
2  Claim.
3          The law appears to me to be clear that as to school
4  districts and as to superintendents, notice of claim must be
5  filed citing Collins v. City of New York, 156 F.Supp. 3d, 448
6  at 460, (S.D.N.Y. 2016)  Notice of claim required for claims
7  "against any school district, board of education, board of
8  cooperative educational services school, or any officer of a
9  school district Board of Education, board of cooperative
10 educational services, or school."
11         As to plaintiff's claim for retaliation in violation
12 of the First Amendment, defendants argue that the 1983 claim
13 premised on that allegation does not meet the standards for a
14 Monell claim.  As everyone here knows, in order to plead a
15 Monell claim, a plaintiff is required to allege facts
16 demonstrating that the alleged constitutional deprivation was
17 the result of a policy, ordinance, regulation, or decision
18 officially adopted or promulgated by the municipality.  Based
19 on my review of the complaint in its present form, it does not
20 seem to me that a plaintiff has provided allegations that make
21 out a Monell claim so I would recommend to plaintiff that they
22 consider whether the Monell claim should be dropped.
23         There is also an argument about qualified immunity.
24 The defendants argue that the 1983 claim should be dismissed as
25 to the individual defendants with respect to conduct that took

place prior to May 16, 2018 on a qualified immunity theory and essentially defendants' argument is that prior to May 16, 2018 it was unclear in this Circuit whether speech that was engaged in, in the context of union membership or participation in union activities, was protected by the First Amendment. And defendants actually cite law holding that a speech made in the context of union membership was not protected by the First Amendment and, in particular, they cite Weintraub v. Board of Education, 593 F.3d 196 at 198 to 99 (2d Cir. 2010).

On May 16, to 18, in Montero v. City of Yonkers 890 F.3d 386 at 402 (2d Cir. 2018), the Second Circuit held that when a person's speech in connection with union activities does not fall within the person's job responsibilities and addresses a matter of public concern, that person is speaking as a private citizen and is entitled to First Amendment protection. Montero at 890 F.3d 394.

So, the defendants contend that prior to the clarification of the law or the change in the law, I should say, represented in Montero, that the individual defendants are entitled to qualified immunity. Accepting defendants' argument for purposes of this case, I have returned to the concept I mentioned earlier that there are acts and conduct pled after May 16, 2018 which could provide the basis for the claim that plaintiff has brought.

So, in my view, a motion to dismiss is not going to be

1   productive in terms of pushing a case towards ultimate
2   resolution because the claim will survive, I suspect, as to
3   conduct that took place post-May 16, 2018, even if I accept the
4   argument that qualified immunity applies prior to May 16, 2018.
5          Next is the ADA claim for denial of reasonable
6   accommodations.  On this point I want to say that having
7   reviewed the allegations of the complaint, it is not entirely
8   clear to me that the plaintiff has provided enough factual
9   allegations to make out a plausible denial of reasonable
10  accommodation.
11         So, what are the factual allegations?  There are
12  allegations indicating that the plaintiff suffers from
13  depression and from anxiety and there is also an assertion,
14  although I don't think there has been a diagnosis, of
15  post-traumatic stress disorder.  Those conditions could provide
16  a basis for me to find that plaintiff suffers from a
17  disability.  There are decisions in this district which have
18  required a plaintiff to, in addition to alleging conditions of
19  the nature that I have cited, that have required a plaintiff to
20  plead facts that the condition, in question, has substantially
21  limited one or more of the plaintiff's major life activities,
22  citing Andino v. Fischer, 698 F.Supp.2d, 362 at 378 (S.D.N.Y.
23  2010).  Defendants have argued here that the plaintiff has not
24  told us in the complaint what major life activities have been
25  substantially limited by her alleged disabilities flowing from

1    the psychiatric conditions she has alleged.  Moreover, with
2    respect to the request for reasonable accommodation, the
3    complaint does not explain why it was necessary for the
4    plaintiff to receive written rather than verbal instruction.
5    So, there is a complaint that the plaintiff explained to her
6    supervisors that it was necessary because of her psychiatric
7    conditions for her to receive communication in written form
8    rather than in verbal form but the complaint doesn't tell us
9    why it was that it was necessary for plaintiff to receive
10   communications in written form as opposed to verbal form
11   because of her conditions.
12            So, what we have is a bare allegation that the
13   plaintiff suffers from certain psychiatric conditions, no
14   explanation or pleading as to how those alleged psychiatric
15   conditions affect the plaintiff in her everyday life, in her
16   major life activities, a request for an accommodation, that
17   being that communication be in writing, but no explanation of
18   why it was necessary given plaintiffs' psychiatric conditions
19   for communications to be made in writing as opposed to
20   verbally.
21            With respect to the retaliation claims alleged under
22   the ADA and the State and City Human Rights Law, the defendants
23   argue that there was a lapse in time between plaintiffs
24   accommodation requests and the alleged retaliation and
25   defendant seems to be calculating the time from the first

moment that the plaintiff made a request for an accommodation. However, in the amended complaint paragraph 25, the plaintiff says that she requested the written communication accommodation throughout the 2016 through 2017 school year and throughout the 2017 through 2018 school year.

In the amended complaint, the plaintiff pleads many alleged adverse actions that were taken against her during, for example, the 2017 to 2018 school year.  Accordingly, accepting that there is a gap between the first request for an accommodation and the first adverse action that's pled in the complaint, the plaintiff has claimed that she was repeatedly requesting the written communication accommodation through both school years and that, one could infer from that, that her request for accommodation -- her continued request for accommodation in the 2017-2018 school year, those requests for accommodations were taking place at the same time that the alleged adverse actions were being taken against her in the form of disciplinary reports and poor evaluations.

The defendants argue that the plaintiff has not made out a claim for hostile work environment under the ADA and the State and City Human Rights Law because, according to defendants, plaintiff has not pled facts demonstrating that defendants' actions were severe and pervasive.  The plaintiff has alleged many, many, many adverse actions as I have said in the form of disciplinary letters and poor evaluations.  Putting

1   them together, there is probably dozens of alleged adverse
2   actions.  So, it does seem to me that there was probably enough
3   here to meet, for pleading purposes, the threshold for
4   pervasive.
5           There is also an argument made by defendants that a
6   claim is not made out because the plaintiff points to hostility
7   related to her request for an accommodation rather than
8   hostility premised on her alleged disability and it's difficult
9   for me to separate the two.  So, someone is requesting an
10  accommodation due to their alleged psychiatric conditions and
11  they are met with hostility, allegedly, when they make repeated
12  requests for an accommodation.  I find it difficult to
13  distinguish between hostility premised on the person's
14  disability and the person's request for an accommodation due to
15  their disability.  I see the two as quite intertwined.  And so,
16  for purposes of a motion to dismiss, I suspect it would be very
17  difficult for me to make the separation that defendants are
18  seeking.
19          So, where do we go from here?  So, Mr. Glass, I'm
20  going to give you two weeks to figure out whether you want to
21  amend the complaint or I should say whether you want to amend
22  the amended complaint to address what I have said.  It is
23  entirely up to you whether you want to amend or not.  If you
24  do, you will propose a second amended complaint within two
25  weeks' time.  If the defendants want to proceed with a motion

1   to dismiss after they see the proposed second amended
2   complaint, they will send me a letter telling me that and
3   proposing a briefing schedule that they have discussed with
4   Mr. Glass.
5           So, Mr. Glass' letter and any proposed second amended
6   complaint will be due by two weeks from today, which is
7   December 13th, and then the City will tell me by December 27th
8   whether they wish to proceed with a motion to dismiss, or I
9   guess it could be styled opposition to Mr. Glass' application
10  for leave to file a second amended complaint.  However the City
11  wants to style it I think we all understand what the substance
12  of that motion to be.
13          Once we know where we are headed with respect to the
14  motion practice, I will enter the appropriate order.
15          So, what remains is discovery, it is my belief that
16  the case will survive in some form, even if the City chooses to
17  proceed with its proposed motion to dismiss.  So, in such
18  cases, it is my practice to enter a case management plan
19  because the case is going to survive, in some form.
20          The parties have submitted a proposed case management
21  plan which seems reasonable to me.  Accordingly, I will enter
22  that plan --
23          MS. TURETSKY:  Your Honor, if I may?  Sorry to
24  interrupt.  The case management plan that was entered --
25          THE COURT:  I understand.  I am going to account for

1     the dates.
2                MS. TURETSKY:  Okay.  Thank you.
3                THE COURT:  As I was about to say, I will enter the
4     parties' case management plan adjusted for the fact that we are
5     holding the conference after the point that the parties
6     submitted the plan so it will be adjusted -- the dates will be
7     adjusted to reflect that fact.
8                Which brings me to my final point which is settlement.
9     Is there any opportunity to settle the case before we get into
10    the motion practice?
11               Mr. Glass, what is your perspective on that?
12               MR. GLASS:  Yes, your Honor.
13               We are always open to discussing settlement.
14    Sometimes it depends on the City's -- in fact there are several
15    other cases pending against the principal in this case; one we
16    have settled, there is another one that is in some settlement
17    discussions so it is really going to become a -- it depends on
18    the Board's position on this case if they're willing to
19    discuss -- she is out of the school at the moment and so we
20    need to understand what the City is willing to do on this case.
21    But, I am always open to discuss terms.
22               Obviously, things may change during the course of the
23    litigation.  She has been reassigned pending charges which have
24    not been pushed yet, they're still outstanding, so that also
25    might precipitate some effect on the federal case.

            So, I would be happy to engage in mediation now if the
City is willing to do that.  These are always fluid cases when
the teacher is still employed and in the system so we have had
different settlements depending on what the person's desires
are, where they want to teach, and I have settled many of these
cases with the board over the years.
            So, if Ms. Turestsky is receptive to early mediation
we are always open to that.  We need to find out where she is
going to go at the end of the 3020A charges and if there will
be some accommodation for what she has gone through.
            THE COURT:  So, should I understand from your remarks
she is not currently in a classroom?
            MR. GLASS:  Yes.
            What happened was, at the beginning of the school
year, the Department of Education authorized her removal and
she is, like, in a reassignment center at this point and she is
not actively teaching.  A lot of these cases do resolve often
with -- I don't think she is going to be terminated based on
the history here and often she will get a small penalty or may
be exonerated and put back to that school.  She probably
doesn't want to return to that school.  So, there are things to
consider regarding what the Board would be willing to do to
placing her going forward and the monetary losses she suffered.
            So we have engaged in discussions.  It may come
through the 3020A process, it may come through this process.

IBT5zabC                      conference

1   They may join together at some point, so.
2            THE COURT:  What is the basis for the disciplinary
3   charges?
4            MR. GLASS:  It is what is pled in the complaint.
5            They wrote up a lot of -- all of a sudden she an
6   incompetent teacher, she has disciplinary issues.  I mean, this
7   is a perfect teacher who taught at Stuyvesant High School until
8   this principal took over and it has been a very hostile
9   environment as from what you might get from the complaint.
10  They have settled one of the cases with offering a substantial
11  amount of money and retiring.  She is not in a position to
12  retire.  We have a case with the chapter leader with the school
13  right now which is in some discussions of and settlement and
14  Ms. Zabar is similar to the chapter leader in figuring out
15  where she would go and how we would sort this out.
16           THE COURT:  Ms. Turestsky, is there any opportunity to
17  settle the case or are we going to have to get into motion
18  practice and discovery?
19           MS. TURETSKY:  Your Honor, it's the defendant's
20  position that all the cases discussed by the plaintiff just now
21  are independently reviewed, they have no bearing one way or the
22  other on the settlement potential of this specific case.  At
23  this point plaintiff has not made a settlement demand so I have
24  nothing to respond to but I think it would be best for the
25  defendant to move ahead with motion practice.

             THE COURT:  Okay.  So, what I am hearing, Mr. Glass,
is that it might make sense for you to make a demand and see
whether we can get the process moving but at least, absent
that, we are going to need to move forward.  So, I will enter a
case management plan, we have set a schedule for the pleading
and for any subsequent motion.
             Is there anything else we can talk about now?
             MS. TURETSKY:  Your Honor, I ask that our time to
answer is stated until after the motion to dismiss is decided,
if we reach that point.
             THE COURT:  Yes.  That's granted.
             MS. TURETSKY:  If I can just clarify two points?
First that I guess we will proceed with discovery regardless of
whether the motion practice is going on.
             THE COURT:  Yes.
             MS. TURETSKY:  Two points addressed.  I understand
your Honor's position, deciding whether to amend the complaint
on the state law claims.  I am not sure, we had made an
argument that notice of claim is -- we understand notice of
claim is required against Board of Education.  It may not be
required against some individuals and there is case law to that
effect.  That's why we didn't take out the State claim
completely.  I don't know if the Court had thoughts on that.
             THE COURT:  I do.  I do.
             So, it is clear to me that a notice of claim is not

1  necessary as to a principal.  However, it is my belief that it
2  is necessary as to a superintendent.  For that proposition I am
3  relying on the Collins v. City of New York which I previously
4  cited which is 156 F.Supp. 3d at 460 and reads, as follows:
5  "New York Education Law 3813 requires a plaintiff to file a
6  notice of claim prior to initiating a lawsuit against a school,
7  school district, board of education or education officer.
8  Superintendents qualify as officers upon whom a notice of claim
9  must be filed but principals do not."
10           So, it is on Collins that I am relying for the
11  proposition that a notice of claim was necessary both as to
12  Board of Education and as to Superintendent Rosales.
13           MR. GLASS:  The other last point I want to clarify
14  regarding the Monell claim, also involving the role of the
15  principal, I believe we cited case law in our letter on page 4
16  about whether the principal may in fact serve as a policy maker
17  for purposes of a 1983 claim and we cited some cases that
18  suggested that some courts have held that and so in deciding
19  whether to, I understand again -- so, if the principal is the
20  policy maker, it is possible that the Board of Ed could be
21  liable on that basis and so that's why -- I don't know if the
22  Court addressed that in its preliminary remarks.
23           THE COURT:  I don't really have anything else to say
24  on that.  You know, obviously I haven't made any decisions as
25  to any of the claims, I am just giving you my reaction to the

letters that I have read.  And if you believe that your allegations are sufficient as to the Monell claim, then you are welcome to persist in that.  Based on what I have read so far, I have concerns about whether the pleadings, whether your amended complaint was adequate as to the Monell claim.  You may disagree and if you do, you are welcome to persist in it.  If you have additional allegations that you want to make in support of your Monell claim, you are welcome to do that, too.  It is entirely up to you but I wanted to alert you at this point that I have concerns that the Monell claim, in its present form, is not sufficient.

MR. GLASS:  I guess the only question, so the amended complaint that you granted us that would get filed, it is not required?  Because it seems to me that if the department is going to maintain its position they're going to move anyway, I may as well just address the claims in the motion to dismiss unless they're agreeing that if I take some claims out they won't proceed.  It seems for me a fruitless exercise for me to amend the complaint and delay things and I will just respond to the motion to dismiss in due course.

So, I guess the Court's suggestion is see if I can negotiate with the City to remove some of the claims and avoid the motion practice?

THE COURT:  That's what I recommend.

MR. GLASS:  Okay.  Thank you.

1            THE COURT:  Anything else?
2            MS. TURETSKY:  No, your Honor.
3            THE COURT:  All right.  Thank you, all.
4                              o0o