**GLASS & HOGROGIAN LLP**
ATTORNEYS AND COUNSELORS AT LAW
A Limited Liability Partnership
85 BROAD STREET, 18TH FLOOR
NEW YORK, NY 10004
212-537-6859
FAX NO. 845-510-2219

*Bryan D. Glass, Esq.*
*Partner*

September 20, 2019

*Via ECF*
Honorable Paul G. Gardephe
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

  Re: <u>Maya Zabar v. New York City DOE, et al.</u>, **18 Civ. 6657 (PGG)**
     **Plaintiff's Response to Defendants' Proposed Summary Judgment Motion Letter**

Dear Judge Gardephe:

  This office represents Plaintiff Maya Zabar in the above-referenced matter. I write in response and opposition to Defendants' September 17, 2019 letter requesting a pre-motion conference in contemplation of Defendants' motion for summary judgment.

  **A. Factual Background**
Ms. Zabar began working with Defendant NYCDOE in September 2008 as an English teacher. Ms. Zabar taught English with the NYCDOE for six years at the High School of Art and Design (HSAD) in Manhattan, and previously at Stuyvesant High School. Ms. Zabar consistently received Satisfactory or Effective ratings from the beginning of her employment through the end of the 2015-16 school year, which was the first year Principal Ureña worked at HSAD.

  **1. Plaintiff's Disability**
Ms. Zabar has been diagnosed with disabilities of major depression and generalized anxiety disorder since 2011. Defendants were informed of her disabilities as early as the summer of 2016 when she asked Principal Ureña for a room change based on her PTSD (post-traumatic stress disorder) symptoms. Principal Ureña agreed to accommodate her.

  In September 2016, Ms. Zabar had a face to face meeting with her Assistant Principal Lynn Rosales, who ordered that Ms. Zabar completely change her film history curriculum within three

days. Ms. Zabar informed AP Rosales about her depression and requested an accommodation that all school-related requests be put in writing or via email. Principal Ureña and AP Rosales neither accommodated Plaintiff, nor did they ask for a formal disability accommodation request.

### 2. Plaintiff's Role on The School's Union Executive Board.

In June 2016, Ms. Zabar was selected to represent the English department teachers at the school for her union, the United Federation of Teachers ("UFT"), as part of HSAD's union executive board. Ms. Zabar was very outspoken about Principal Ureña's policy. She also reported that her AP Rosales was failing to report to and teach her own assigned Advanced Placement (AP) classes; breaching her data entry duties; and retaliating against all teachers who expressed any concern about her practices.

### 3. Plaintiff Started to Receive Her First-Ever Disciplinary Letters, Less-Than-Effective Evaluation Reports, and Less-Than-Effective Ratings.

Ms. Zabar received her first-ever disciplinary letter to file, dated November 17, 2016, after she started to serve on the union executive board. She received at least six more unwarranted disciplinary letters to file between February 27, 2017, and June 22, 2018. The disciplinary letters included allegations that she left school to attend a hearing against Principal Ureña and about her "poor attendance," which was caused by her aggravated anxiety and depression due to the administration's discriminatory and retaliatory treatment of her.

Between November 22, 2016, and May 31, 2018, Ms. Zabar received at least nine unwarranted less-than-effective written evaluation reports, two of which were expunged because Principal Ureña did not write the evaluation report properly or based on other procedural errors.

Ms. Zabar also received her first-ever less-than-effective ratings. For the 2016-17 school year, she received a Developing rating on her "Measures of Teachers Performance" ("MOTP") and an Effective overall annual rating due to her student's Effective test scores. For the 2017-18 school year, she received an Ineffective rating on her MOTP and a Developing overall annual rating, which would make her subject to a burdensome Teacher Improvement Plan for the 2018-19 school year by the school administration.

Further, Ms. Zabar remarkably received an Ineffective rating on content knowledge in an observation report when she was teaching the novel *Night* about the Holocaust, although the administration had heard her present her personal history about the Holocaust at an executive board meeting.

### 4. Other Facts about Retaliation, Including Section 3020-a Disciplinary Charges Preferred against Plaintiff.

In or around December 2017, Ms. Zabar extensively prepared for an academic art show with the administration's knowledge, but only to be told that the administration scheduled a

meeting there so the opening was suddenly cancelled. Neither AP Rosales nor Principal Ureña attended the rescheduled academic art show.

On February 16, 2018, Ms. Zabar filed a charge with the Equal Employment Opportunity Commission ("EEOC") claiming disability discrimination. Since filing the charge, she has been subject to additional blatant acts of retaliation. Ms. Zabar was not told what she would be teaching for the 2018-19 school year, although she was informed ahead of time in past years. On September 7, 2018, Ms. Zabar was served Section 3020-a disciplinary charges seeking termination of her employment, which are still pending to date. On September 17, 2018, Ms. Zabar was reassigned from the school without any teaching duties. Ms. Zabar is no longer eligible for per session work based on her reassigned status. She continues to await a hearing on the disciplinary charges. Upon information and belief, Principal Ureña (who has been the subject of significant media notoriety) is no longer the principal of HSAD and has been assigned to work in another school in the NYCDOE as a form of demotion.

## B. Plaintiff's Claims Are Not Barred by the Statutes of Limitations and the Notice of Claim Requirements.

A notice of claim is not required to be filed against a school principal or assistant principal as they are not officials of the District for purposes of a notice of claim. *See Collins v City of New York*, 156 F. Supp. 3d 448, 460 (S.D.N.Y. 2016). Defendants implicitly concede that Plaintiff's ADA claims after May 19, 2017, as well as the SHRL and CHRL claims after July 24, 2017, are timely. Defendant Marisol Rosales, who was the Superintendent of District 2 within the NYCDOE, condoned Defendant Urea's hostile and retaliatory behaviors towards Plaintiff.

## C. There Are Triable Issues of Fact Regarding Section 1983 Retaliation
### a) Plaintiff Has Established That She Engaged in Protected Speech, That Adverse Actions Were Taken Against Her, and That a Causal Connection Exists

To establish a First Amendment retaliation claim, a public employee must show that she is (1) engaged in protected First Amendment activity, (2) suffered an adverse employment action, and that (3) the protected activity was "at least a substantial or motivating factor in the adverse employment action." Pekowsky v. Yonkers Bd. of Educ., 23 F. Supp. 3d 269, 276 (S.D.N.Y. 2014). To determine whether Plaintiff's speech is protected, the Court must first determine whether the subject of his speech was (1) a matter of public concern, and if so, (2) whether she spoke as a private citizen or as a public employee. See Matthews v. City of New York, 779 F.3d 167, 172 (2d Cir. 2015).

Plaintiff plainly engaged in protected First Amendment activity. As a Union Representative during the 2016-17 and 2017-18 school years, she vocally opposed policies of her school's administration at the union consultation meetings. These issues included ventilation issues in the building; scheduling of classes; and breaches of assistant principals as it came to data entry. These issues not only involved her fellow teachers, but the entire school community. These issues were not personal in nature, but advocated for others, and touch on matters of public concern.

3

There are multiple adverse actions taken against Plaintiff. Plaintiff received numerous Ineffective observations, which are not particularly credible as Plaintiff was assigned to teacher several Advanced Placement courses in the school during the 2017-18 school year and had been a highly rated teacher before then. Worse, in September 2018, Defendants served Plaintiff with Education Law Section 3020-a charges seeking the termination of her employment and reassigned her out of the classroom and from teaching English altogether. Even "relatively minor events" can give rise to Section 1983 liability, as long as the harassment is not so trivial that it would not deter an ordinary employee in the exercise of her First Amendment rights. See Rivera Jimenez v. Pierluisi, 362 F.3d 87, 94 (1st Cir. 2004). There are issues of fact as to whether Plaintiff's performance as a teacher led to the poor ratings and charges. Moreover, sufficient material facts exist for a reasonable jury to infer that these actions were retaliatory.

### b) The Individually Named Defendants Are Not Entitled to Qualified Immunity

Union advocacy representation on behalf of other members qualifies as conduct as a private citizen and may be protected under the First Amendment. See, e.g., Montero v. City of Yonkers, 890 F.3d 286 (2d Cir. 2018). As Plaintiff was served her Section 3020-a charges following the Montero decision, the individual defendants are not entitled to qualified immunity.

### c) Plaintiff Has Established a BOE Policy, Practice, or Custom through the Acts of Her Supervisors

A municipality, or municipal agency such as Defendant NYCDOE, may be held liable under Section 1983 if a plaintiff's injury is the result of municipal policy, custom, or practice. *See* Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978); Patterson v. County of Oneida, 375 F.3d at 206 (2d Circ. 2004). To maintain a claim, a plaintiff must allege "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995). A "public school principal may be a final policymaker where the 'harm that befell the plaintiff was under the principal's control.'" Marino v. Chester Union Free Sch. Dist., 859 F. Supp. 2d 566, 569 (S.D.N.Y. 2012).

Defendant Ureña was directly responsible for the issuance of Section 3020-a charges against Plaintiff. Additionally, he personally authored many of observation reports issued to Plaintiff on which her Section 3020-a charges are based. Plaintiff has made a Monell claim against Defendant BOE based on Principal Ureña's conduct and Superintendent Rosales's condonation of such conduct.

### D. There Are Triable Issues of Fact As To Whether Plaintiff Was Denied a Reasonable Accommodation, Was Subjected to a Hostile Work Environment, or Retaliated Against Because of Her Disabilities Under the ADA.

Plaintiff has been diagnosed with disabilities of major depression and generalized anxiety disorder since 2011. Defendants were informed of her disabilities as early as the summer of 2016. Plaintiff is legally "disabled" within the meaning of the ADA, the SHRL, and the CHRL. *See Bartlett v. NY State Bd. of Law Examiners*, 226 F.3d 69, 80 (2d Cir. 2000). There are issues of fact

4

as to whether Plaintiff's disabilities, without the proper reasonable accommodations, impaired major life activities, such as her ability to read and write.

To survive summary judgment on her hostile work environment claim, Plaintiff must demonstrate that a rational trier of fact could find that "the complained of conduct (1) is objectively severe or pervasive—that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's sex [or disability]." Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007). Plaintiff was subjected to repeated less-than-effective evaluations, disciplinary letters, and Section 3020-a charges. Whether this qualifies as sufficiently severe or pervasive to alter the conditions of her employment is an issue for a jury.

For a plaintiff to state a claim for retaliation, a plaintiff must prove that (1) she engaged in a protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action." See Fincher v. Depository Trust & Clearing Corp., 604 F.3d 712, 720 (2d Cir. 2010). Since Plaintiff filed the disability discrimination charge with the EEOC on February 16, 2018, she has been subject to acts of retaliation, including less-than-effective observation reports, disciplinary letters, and Section 3020-a charges. These acts occurred closely in time, within months, sometimes weeks, following her protected activity.

**E. There Are Triable Issues of Fact As to Whether Plaintiff Was Denied a Reasonable Accommodation, Was Subjected to a Hostile Work Environment, or Retaliated Against Because of Her Disabilities Under the SHRL and the CHRL.**

Under the NYCHRL, a plaintiff need only demonstrate that she has been treated less well than other employees because of her disability. Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 110, 108-110 (2d Cir. 2013). There are material issues of fact that exist as to whether similarly-situated, non-disabled teachers were treated better than Plaintiff. For example, Plaintiff has alleged that her observation-reports were unjustified and she was treated in a disparate fashion.

NYCHRL claims for retaliation are analyzed under a similar framework to Title VII and the NYSHRL, except that a plaintiff need only show the employer's conduct was "reasonably likely to deter a person from engaging in protected activity." NYCHRL § 8-107(7); Husser v. N.Y.C. Dep't of Educ., 137 F. Supp. 3d 253, 274 (E.D.N.Y. 2015), (quoting Williams, 61 A.D. 3d 62, 71, 872 N.Y.S.2d 27 (N.Y. App. Div. 2009). Clearly, issuing a teacher less-than-effective observation reports, disciplinary letters, and Section 3020-a charges seeking her termination are likely to deter a person from engaging in protected activity. Thank you for the Court's consideration.

Respectfully submitted,

By: \_\_\_\_s/_____
BRYAN D. GLASS, ESQ.

c: Samantha Turetsky, Assistant Corporation Counsel, Attorney for Defendants (via ECF)