UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MAYA ZABAR,

      Plaintiff,

  v.

NEW YORK CITY DEPARTMENT OF
EDUCATION; MARISOL ROSALES,
SUPERINTENDENT OF HIGH SCHOOLS
OF DISTRICT 2; MANUEL UREÑA,
PRINCIPAL OF HIGH SCHOOL OF ART
AND DESIGN; LYNN ROSALES,
ASSISTANT PRINCIPAL OF HIGH
SCHOOL OF ART AND DESIGN; SARI
PEREZ, ASSISTANT PRINCIPAL OF
HIGH SCHOOL OF ART AND DESIGN,

      Defendants.

**ORDER**

18 Civ. 6657 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

    Plaintiff Maya Zabar – a New York City school teacher – brings claims against

Defendants New York City Department of Education ("DOE"); Marisol Rosales, Superintendent

of High Schools of District 2 ("Superintendent Rosales"); Manuel Ureña, principal of DOE's

High School of Art and Design (the "High School"); Lynn Rosales, an assistant principal at the

High School; and Sari Perez, also an assistant principal at the High School.  Plaintiff alleges that

she suffered discrimination and retaliation in her workplace in violation of the Americans with

Disabilities Act (the "ADA"); 42 U.S.C. § 1983; the New York State Human Rights Law (the

"NYSHRL"); and the New York City Human Rights Law (the "NYCHRL").  Defendants have

moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  For the reasons stated below, Defendants'

motion will be granted in part and denied in part.

# BACKGROUND[1]

Plaintiff became a teacher for the New York City DOE in September 2008.  (Am. Cmplt. (Dkt. No. 37) ¶ 15)  In 2011, Plaintiff was diagnosed with "the disabilities of major depression and generalized anxiety."  (Id. ¶ 16)  In 2012, Plaintiff began teaching English at the High School.  (Id. ¶ 17)  From the beginning of her DOE career through the 2015-2016 school year, Plaintiff received Satisfactory or Effective ratings for her teaching.  (Id. ¶¶ 19-20)

The teachers at the High School are represented by the United Federation of Teachers (the "Union"), and in June 2016, Plaintiff was selected to represent the High School's English department on the Union's executive board.  In this capacity, Plaintiff met monthly with the principal and other High School administrators "to resolve issues at the school."  Plaintiff was "very outspoken regarding issues pertaining to [the] administration."  (Id. ¶¶ 21, 27, 32)  She remained in this role through the 2017-2018 school year.  (Id. ¶ 41)

In the summer of 2016, Plaintiff asked Principal Urena for a room change because of PTSD symptoms she was experiencing.  Plaintiff explained to Urena that she had been "diagnosed with generalized anxiety disorder, and her assigned room was a trigger to her mental health condition."  (Id. ¶ 23)  Principal Urena granted the request.  (Id. ¶ 16)

In September 2016, Plaintiff informed Assistant Principal Rosales that she had been diagnosed with generalized anxiety disorder and major depression.  Plaintiff requested that "all instructions, reminders, or updates regarding anything school related" be in writing as an accommodation to her disability.  Assistant Principal Rosales "shrugged her shoulders, but did not inform Plaintiff that she needed to submit a formal request for a reasonable medical

---

[1]  The following facts are drawn from the Amended Complaint and are presumed true for purposes of resolving Defendants' motion to dismiss.  See Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 237 (2d Cir. 2007).

accommodation for this to occur."  (Id. ¶ 24)  Since that time, Defendants have "refused to put many school-related requests in writing."  Plaintiff reiterated her request for this accommodation "throughout the 2016-17 and 2017-18 school years," but was "ignore[d.]"  (Id. ¶ 25)

In November 2016, Plaintiff reported to the Union that Assistant Principal Rosales was not "teach[ing] her assigned Advanced Placement [] classes.  Additionally, Plaintiff reported that Assistant Principal Rosales was breaching her duties as it pertained to data entry and that she was retaliating against all teachers who expressed any concern about her practices." (Id. ¶ 28)  Within a month, Assistant Principal Rosales was removed from her assigned Advanced Placement classes.  (Id. ¶ 31)

Plaintiff alleges that "[s]hortly after joining the [U]nion executive board and informing [Assistant Principal] Rosales of her medical conditions in September 2016, Plaintiff began experiencing harassment and retaliation from her school administration."  (Id. ¶ 26)  The alleged harassment and retaliation included, inter alia:  (1) "unwarranted" disciplinary letters dated November 5, 2016, November 17, 2016, February 27, 2017, April 19, 2017, September 6, 2017, March 16, 2018, May 2, 2018, and June 22, 2018[2] (see id. ¶¶ 29, 30, 39, 42, 51, 54, 56); (2) "unwarranted less-than-effective" written evaluations dated November 22, 2016, February 8, 2017, May 18, 2017, June 7, 2017, June 21, 2017, December 8, 2017, February 5, 2018, May 7, 2018, and May 31, 2018[3] (see id. ¶¶ 33-38, 44-45, 47-48, 52-53); (3) "[a]t the conclusion of the 2016-17 school year, Plaintiff['s]. . . first ever Developing rating on her 'Measures of Teachers Performance' ('MOTP'), which is part of a teacher's overall annual rating" (see id. ¶ 40); (4) in late June 2018, "an Ineffective overall rating on her Measures of Teacher Performance . . . for

_____

[2]  Prior to November 5, 2016, Plaintiff had never received a disciplinary letter.  (Id. ¶ 29)
[3]  Prior to November 22, 2016, Plaintiff had never received a "less-than-effective evaluation." (Id. ¶ 33)

the 2017-18 school year" (see id. ¶ 58); (5) September 7, 2018 "Section 3020-a disciplinary

charges seeking termination of her employment (see id. ¶ 60); and (6) a September 17, 2018

"reassign[ment] from the school without any teaching duties," which makes Plaintiff "no longer

eligible for per session work."  (Id. ¶ 61)

       On March 15, 2018, Plaintiff filed a charge with the Equal Employment

Opportunity Commission ("EEOC") claiming disability discrimination.[4]  (Turetsky Decl. (Dkt.

No. 58), Ex. 1)  Plaintiff contends that a number of the acts listed above constitute retaliation for

her EEOC filing.  (Id. ¶ 50).  On April 26, 2018, Plaintiff received a right to sue letter from the

EEOC.  (Id., Ex. A & ¶ 55)

---

[4]  The Amended Complaint asserts that Plaintiff filed her EEOC charge on February 16, 2018
(Am. Cmplt. (Dkt. No. 37) ¶ 49), but the stamped copy of the charge reflects that it was received
by the EEOC on March 15, 2018.  (Turetsky Decl. (Dkt. No. 58), Ex. 1)  For purposes of the
statute of limitations, the date a charge of discrimination is received by the EEOC is the date that
controls.  See 29 C.F.R. § 1640.5 ("A complaint or charge of employment discrimination is
deemed to be filed, for purposes of determining timeliness, on the date the complaint or charge is
first received by a Federal agency with section 504 or ADA jurisdiction, regardless of whether it
is subsequently transferred to another agency for processing.").

"Although plaintiff's EEOC Charge was submitted by defendant, the '[c]ourt takes judicial
notice of [p]laintiff's EEOC charge on a motion to dismiss.'  Because plaintiff's EEOC Charge is
'a public document filed in an administrative proceeding, and is integral to plaintiff's
[discrimination] claims, the charge, together with the documents accompanying the charge filed
in the EEOC proceeding, are also properly considered on' a motion to dismiss."  Jordan v.
Forfeiture Support Assocs., 928 F. Supp. 2d 588, 591 n.1 (E.D.N.Y. 2013) (first quoting Morris
v. Broadridge Fin. Servs., Inc., No. 10-CV-1707, 2010 WL 5187669, at *3 n. 2 (E.D.N.Y. Dec.
14, 2010); then quoting Cohn v. KeySpan Corp., 713 F. Supp. 2d 143, 154 (E.D.N.Y. 2010)); see
also Chidume v. Greenburgh-N. Castle Union Free Sch. Dist., No. 18-CV-01790 (PMH), 2020
WL 2131771, at *2 (S.D.N.Y. May 4, 2020) ("In situations where exhaustion of administrative
remedies is a prerequisite to bringing suit, a court may take judicial notice of the records and
reports of the relevant administrative bodies, as well as the facts set forth therein.").
Accordingly, this Court takes judicial notice that Plaintiff's EEOC charge was received by – and
thus filed with – the EEOC on March 15, 2018.

The Complaint was filed on July 24, 2018 (Dkt. No. 1), and the Amended

Complaint was filed on October 4, 2018.  (Dkt. No. 37)  Defendants moved to dismiss on March

18, 2019.  (Dkt. No. 57)

## DISCUSSION

## I.    MOTION TO DISMISS STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v.

Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

"In considering a motion to dismiss . . . the court is to accept as true all facts alleged in the

complaint," Kassner, 496 F.3d at 237 (citing Dougherty v. Town of N. Hempstead Bd. of Zoning

Appeals, 282 F.3d 83, 87 (2d Cir. 2002)), and must "draw all reasonable inferences in favor of

the plaintiff."  Id. (citing Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)).

"[A] plaintiff alleging employment discrimination or retaliation is not required to

plead facts sufficient to establish a prima facie case," however.  Krasner v. HSH Nordbank AG,

680 F. Supp. 2d 502, 512 (S.D.N.Y. 2010) (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506,

508, 515 (2002) (addressing motion to dismiss standard for Title VII discrimination claim);

Williams v. N.Y.C. Hous. Auth., 458 F.3d 67, 72 (2d Cir. 2006) (per curiam) (applying

Swierkiewicz to retaliation claims)).  Instead, as the Swierkiewicz court explained, the "ordinary

rules for assessing the sufficiency of a complaint" under Fed. R. Civ. P. 8(a)'s notice pleading

standard apply.  Swierkiewicz, 534 U.S. at 511.

Under this standard, a plaintiff is required only to set forth a "short and plain

statement of the claim," Fed. R. Civ. P. 8(a), with sufficient factual "heft 'to sho[w] that the

pleader is entitled to relief.'"  Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)).  To

survive a motion to dismiss, plaintiff's "[f]actual allegations must be enough to raise a right of relief above the speculative level," id. at 555, and plaintiff's claims must be "plausible on [their] face." Id. at 570.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Iqbal, 556 U.S. at 678.

"Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (internal quotation marks omitted) (quoting Twombly, 550 U.S. at 557).  Moreover, where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief," Twombly, 550 U.S. at 558, or where a plaintiff has "not nudged [his] claims across the line from conceivable to plausible, the[] complaint must be dismissed."  Id. at 570.  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557).

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."  DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (citing Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); Hayden v. Cty. of Nassau, 180 F.3d 42, 54 (2d Cir. 1999)).  "In situations where exhaustion of administrative remedies is a prerequisite to bringing suit, a court may take judicial notice of the records and reports of the relevant administrative bodies, as well as the facts set forth therein."  Chidume v. Greenburgh-N. Castle Union Free Sch. Dist., No. 18-CV-01790 (PMH), 2020 WL 2131771, at *2 (S.D.N.Y. May 4, 2020).

## II.   ADA CLAIMS AGAINST DOE

The Amended Complaint asserts ADA claims against DOE for denial of a reasonable accommodation, hostile work environment, and retaliation.  (Am. Cmplt. (Dkt. No. 37) ¶¶ 62-67)  Defendants contend that Plaintiff's ADA claims are partially time-barred and, in any event, fail to state a claim under Rule 12(b)(6).  (Def. Br. (Dkt. No. 59) at 12, 15-21)[5]

### A.   Statute of Limitations

"A plaintiff seeking to assert an ADA discrimination claim must first file an administrative charge with the EEOC or an equivalent agency 'within three hundred days after the alleged unlawful employment practice.'  Failure to do so renders the claim time-barred." Forman v. City of New York, 2017 WL 1167334, at *3 (S.D.N.Y. March 27, 2017) (quoting 42 U.S.C. § 2000e-5(e)(1)); Williams, 458 F.3d at 69-70).  "'[U]nder the continuing violation doctrine, a plaintiff may bring claims for discriminatory acts that would have been barred by the statute of limitations as long as an act contributing to that [discrimination] took place within the statutory time period.'"  Purcell v. New York Inst. of Tech. - Coll. of Osteopathic Med., 931 F.3d 59, 65 (2d Cir. 2019) (quoting Papelino v. Albany Coll. of Pharmacy of Union Univ., 633 F.3d 81, 91 (2d Cir. 2011) (alterations in original)).  However, this doctrine is "heavily disfavored in the Second Circuit and courts have been loath to apply it absent a showing of compelling circumstances."  Trinidad v. N.Y.C. Dep't of Corr., 423 F. Supp. 2d 151, 165 n.11 (S.D.N.Y. 2006) (internal quotation marks omitted).  Moreover, "multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation."  Lambert v. Genesee Hosp., 10 F.3d 46, 53 (2d Cir. 1993).

---

[5]  The page numbers of documents referenced in this Order correspond to the page numbers designated by this District's Electronic Case Files ("ECF") system.

Defendants argue that because the date-stamped version of the EEOC charge indicates that the EEOC received Plaintiff's charge of discrimination on March 15, 2018, "any ADA claims arising before May 19, 2017 are time-barred."  (Def. Br. (Dkt. No. 59) at 12)  The Amended Complaint asserts numerous adverse actions after May 19, 2017, however, so even if the Court were to accept DOE's argument, most of Plaintiff's ADA claims would be timely.

As to any time-barred adverse actions, Plaintiff contends that the continuing violation doctrine should apply, citing "a continuing chain of ill treatment."  (Pltf. Opp. Br. (Dkt. No. 62) at 12)  The law is well settled that "multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation."  Lambert, 10 F.3d at 53.  Here, Plaintiff alleges no discriminatory policy or mechanism, but rather, a sequence of discriminatory incidents.  The continuing violation doctrine does not apply in such a circumstances.

Accordingly, Defendants' motion is granted as to adverse employment actions that took place before May 19, 2017 – three hundred days before Plaintiff's EEOC charge was filed on March 15, 2018.

## B.     Denial of Reasonable Accommodation

### 1.     Applicable Law

"To state a claim for discrimination based upon an employer's failure to accommodate, [Plaintiff] must allege facts showing:  (1) she is an individual with a disability; (2) that an employer covered by the ADA had notice of her disability; (3) that, with reasonable accommodation, she could perform the essential functions of the position; and (4) that the employer refused to make such accommodations."  Santos v. City of New York, 2001 WL 1568813, at *5 (S.D.N.Y. Dec. 7, 2001) (citing Kendricks v. Westhab, Inc., No. 98 Civ. 158,

2001 WL 1149026, at *6 (S.D.N.Y. Sept. 28, 2001)).  "To demonstrate that [Plaintiff] is a 'qualified individual with a disability,' [she] must establish that [s]he has a physical or mental impairment and provide evidence that such impairment 'substantially limits one or more of that person's major life activities.'  'Major life activities' include: 'caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working.'"  Andino v. Fischer, 698 F.Supp.2d 362, 378 (S.D.N.Y. 2010) (quoting Heilweil v. Mount Sinai Hospital, 32 F.3d 718, 722 (2d Cir. 1994); 42 U.S.C. § 12102(2)(A)).

> **2.**     **Analysis**

Defendants contend that Plaintiff has not adequately pled that she suffers from a disability under the ADA, because she "does not identify any major life activities that are substantially limited by her alleged disabilities."  (Def. Br. (Dkt. No. 59) at 15)

Plaintiff argues that the Amended Complaint alleges that she suffers from depression and anxiety, and that these conditions "have impaired her ability to teach at [the High School]" and therefore "limit[] her ability to work."  (Pltf. Opp. Br. (Dkt. No. 62) at 15)

The Amended Complaint states that "Plaintiff has been diagnosed with the disabilities of major depression and generalized anxiety disorder since 2011."  (Am. Cmplt. (Dkt. No. 37) ¶ 16)  Plaintiff further alleges that her "assigned room was a trigger to her mental health condition," and that "she required all instructions, reminders, or updates regarding anything school related [to be] in writing or via email."  (Id. ¶¶ 23-24)  These allegations are sufficient to demonstrate that Plaintiff's ability to work – a major life activity listed in Andino – is limited by her mental health conditions.  Accordingly, Plaintiff has adequately pled that she is an individual with a disability under the ADA.

Defendants also argue that Plaintiff has not satisfied the third prong of a failure to accommodate claim: "that, with reasonable accommodation, she could perform the essential functions of the position. . . ." Santos, 2001 WL 1568813, at *5. Plaintiff argues that, while not explained in the Amended Complaint, "it is easy to deduce [from Plaintiff's accommodation request] that these accommodations were necessary so as to prevent [Plaintiff] from experiencing anxiety attacks." (Pltf. Opp. Br. (Dkt. No. 62) at 17)

Plaintiff's "easy to deduce" argument is not persuasive. The Amended Complaint does not explain in any fashion how the requested accommodation – that "all instructions, reminders, or updates regarding anything school related [be] in writing or via mail" – would allow Plaintiff to "perform the essential functions of the position." The Amended Complaint likewise does not explain the nature of Plaintiff's anxiety attacks, what brings them on, or how they affect Plaintiff's ability to perform her job. The Court concludes that the Amended Complaint does not plead facts establishing the third prong of a failure to accommodate claim. Accordingly, Plaintiff's claim for denial of a reasonable accommodation under the ADA will be dismissed.[6]

## C.    **Hostile Work Environment**

### 1.    **Applicable Law**

"[T]he Second Circuit has not decided whether a hostile work environment claim is cognizable under the ADA. District courts within this Circuit, however, have recognized such

---

[6] "[T]he legal standards for discrimination claims under the ADA and the NYSHRL are essentially the same, except to the extent that the NYSHRL has been interpreted to endorse a broader definition of 'disability.'" Murtha v. New York State Gaming Comm'n, No. 17 CIV. 10040 (NSR), 2019 WL 4450687, at *16 (S.D.N.Y. Sept. 17, 2019); see also Fox v. Costco Wholesale Corp., 918 F.3d 65, 76 (2d Cir. 2019) ("Because NYSHRL claims are analyzed as ADA claims, [plaintiff]'s state law claims for disparate treatment, retaliation, and failure to accommodate were properly dismissed."). Accordingly, Defendants' motion to dismiss Plaintiff's NYSHRL reasonable accommodation claim will be granted.

claims, applying the same standard applicable to hostile work environment claims under Title VII." Garcia v. Kings Cty. Hosp. Ctr., 2018 WL 389212, at *6 (SDNY Jan. 11, 2018) (citing Robinson v. Dibble, 613 Fed. App'x 9, 13 n.2 (2d Cir. 2015) (summary order) ("We have not yet decided whether a hostile work environment claim is cognizable under the ADA."); Christiansen v. Omnicom Group, Inc., 167 F. Supp. 3d 598, 612-13 (S.D.N.Y. 2016) (recognizing that "district courts within the Second Circuit[] have recognized such claims"), aff'd in part, rev'd in part, 852 F.3d 195 (2d Cir. 2017)).

To establish a hostile work environment claim under the ADA, "a plaintiff 'must plead facts that would tend to show that the complained of conduct:  (1) is objectively severe or pervasive – that is, . . .  creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's [disability].'"  Forgione v. City of New York, 2012 WL 4049832, at *7 (E.D.N.Y. Sept. 13, 2012) (quoting Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007) (alterations in original)).

2.    **Analysis**

Plaintiff's hostile work environment claim fails because the Amended Complaint does not plead facts suggesting that Defendants "create[d] [a hostile work] environment because of the [P]laintiff's disability."  Forgione, 2012 WL 4049832, at *7.  While the Amended Complaint provides a chronology of alleged adverse actions, it does not plead facts linking Plaintiff's disability to the alleged adverse actions.  The absence of factual allegations providing a causal nexus between Plaintiff's disability and the alleged adverse actions is fatal to Plaintiff's

hostile work environment claim.  Accordingly, Defendants' motion to dismiss Plaintiff's ADA hostile work environment claim will be granted.[7]

###   D.   Retaliation

####      1.   Applicable Law

"To make out a prima facie case of retaliation, a plaintiff must make four showings:  that '(1) she engaged in a protected activity; (2) her employer was aware of this activity; (3) the employer took adverse employment action against her; and (4) a causal connection exists between the alleged adverse action and the protected activity.'"  Summa v. Hofstra Univ., 708 F.3d 115, 125 (2d Cir. 2013) (quoting Schiano v. Quality Payroll Sys., Inc., 445 F.3d 597, 609 (2d Cir. 2006)).  "[A]n adverse action is one that 'well might have dissuaded a reasonable [person] from making or supporting a charge of discrimination.'"  Smith v. City of New York, No. 15 Civ. 4493 (RJS), 2016 WL 4574924, at *10 (S.D.N.Y. Sep. 1, 2016) (quoting Warren v. Goord, No. 06-3349-PR, 2008 WL 5077004, at *2 (2d Cir. Nov. 26, 2008)).  A causal connection between an alleged adverse action and protected activity may be demonstrated by temporal proximity.  Nagle v. Marron, 663 F.3d 100, 110 (2d Cir. 2011) ("A plaintiff can establish a causal connection to support a retaliation claim by showing that the protected activity was closely followed in time by the adverse employment action.") (internal quotation marks, alterations, and citation omitted).

While the Second Circuit has articulated no "bright line" rule for when an alleged retaliatory action occurs too far in time from the protected activity to be

---

[7]  "The standard for demonstrating a hostile work environment is the same under Title VII, the ADA, the Rehabilitation Act, and the NYSHRL."  Leftridge v. New York City Dep't of Educ., No. 17CV7027 (WHP), 2020 WL 1503665, at *11 (S.D.N.Y. Mar. 30, 2020); see also Ferraro v. New York City Dep't of Educ., 404 F. Supp. 3d 691, 719 (E.D.N.Y. 2017), aff'd, 752 F. App'x 70 (2d Cir. 2018) (noting that "[h]ostile work environment claims brought under the NYSHRL are likewise evaluated under the same standard" as the ADA).  Accordingly, Defendants' motion to dismiss Plaintiff's NYSHRL hostile work environment claim will be granted.

considered causally connected, it is well settled that when "mere temporal proximity" is offered to demonstrate causation, the protected activity and the adverse action must occur "very close" together. "[D]istrict courts within the Second Circuit have consistently held that the passage of two to three months between the protected activity and the adverse employment action does not allow for an inference of causation."

Kouakou v. Fideliscare New York, 920 F. Supp. 2d 391, 401 (S.D.N.Y. 2012) (first quoting

Gorman-Bakos v. Cornell Co-op Extension of Schenectady City, 252 F.3d 545, 554 (2d Cir.

2001); then quoting Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273-74 (2001); then quoting

Murray v. Visiting Nurse Servs. of N.Y., 528 F. Supp. 2d 257, 275 (S.D.N.Y. 2007); citing

Ragin v. E. Ramapo Cent. Sch. Dist., No. 05-cv-6496 (PGG), 2010 WL 1326779, at *24

(S.D.N.Y. Mar. 31, 2010) ("[M]any courts in this circuit have held that periods of two months or

more defeat an inference of causation.")); Garrett v. Garden City Hotel, Inc., No. 05-cv-962

(JFB)(AKT), 2007 WL 1174891, at *21 (E.D.N.Y. Apr. 19, 2007) (finding no causal connection

where there was a two-and-a-half month gap between the alleged protected activity and adverse

employment action); Yarde v. Good Samaritan Hosp., 360 F. Supp. 2d 552, 562 (S.D.N.Y. 2005)

("Three months is on the outer edge of what courts in this circuit recognize as sufficiently

proximate to admit of an inference of causation."); Hussein v. Hotel Employees & Rest. Union,

Local 6, No. 98-cv-9017 (SAS), 2002 WL 10441 (S.D.N.Y. Jan. 3, 2002) (holding that a two-

month gap defeated a retaliatory nexus).

## 2.   **Analysis**

Plaintiff claims that she engaged in protected activity in the summer of 2016,

when she requested a classroom change because of her anxiety disorder, and in September 2016,

when she requested that all "instructions, reminders, and updates" be in writing, because of her

anxiety disorder and major depression condition. (Am. Cmplt. (Dkt. No. 37) ¶¶ 23-24) Plaintiff

further alleges that she repeated the request for written communications "throughout the 2016-17

and 2017-18 school years."  (Id. ¶ 25)  Plaintiff also claims that she engaged in protected activity

when she filed a discrimination charge with the EEOC in March 2018.  (Id. ¶¶ 49-50)

As discussed above, the Amended Complaint cites numerous alleged adverse

employment actions that took place in late 2016, and throughout 2017 and 2018.  Assuming

arguendo that claims premised on adverse actions taken before May 19, 2017 are time-barred,

the Amended Complaint lists numerous disciplinary letters and poor evaluations from March and

May 2018 that are in close proximity to Plaintiff's EEOC complaint.  See, e.g., id. ¶¶ 51-54.

These allegations are sufficient to demonstrate temporal proximity.  Accordingly, Defendants'

motion to dismiss Plaintiff's ADA retaliation claim will be denied.[8]

## III.   SECTION 1983 FIRST AMENDMENT RETALIATION CLAIM

In connection with her Section 1983 claim, Plaintiff contends that Defendants

violated her First Amendment rights

> by retaliating against her . . . and subjecting her to a hostile work environment for
> exercising her freedom of speech as a citizen with regard to her speaking up as a member
> of the School's consultation committee by advocating for other members on various
> union issues in front of school administration, including but not limited to swastikas in
> the school, advocating for grievances for other staff members, reporting to her supervisor
> Lynn Rosales for not teaching her classes, and other work conditions, such as lack of air
> conditioning, inadequate supplies, and security issues in the school.

---

[8]  "The elements of retaliation under Title VII, the NYSHRL, and the NYCHRL are 'identical,'
except that the NYCHRL employs a broader standard of an 'adverse employment action' than
the federal and state statutes."  Green v. Mount Sinai Health Sys., Inc., No. 17-CV-3999 (VEC),
2019 WL 4392691, at *3 (S.D.N.Y. Sept. 12, 2019)) (quoting Nieblas-Love v. New York City,
165 F. Supp. 3d 51, 70 (S.D.N.Y. 2016)); see also Cornetta v. Town of Highlands, No. 18-CV-
12070 (KMK), 2020 WL 363042, at *9 (S.D.N.Y. Jan. 22, 2020) ("The NYSHRL contains a
similar provision against retaliation [as the ADA] and is governed by the same standard.").
Accordingly, Defendants' motion to dismiss Plaintiff's NYSHRL retaliation claim will be
denied, except as to Superintendent Rosales.  As discussed below, Plaintiff's NYSHRL claims
against Rosales fail for failure to comply with notice of claim requirements.

(Id. ¶ 69)  This allegation relates to Plaintiff's Union activities, in which she attended monthly

meetings with school administrators and advocated for teachers in the High School's English

Department.  (Id. ¶¶ 21, 27, 32)

### A.    Section 1983 Claim Against DOE

A municipality can only be held liable under Section 1983 "when execution of a

government's policy or custom, whether made by its lawmakers or by those whose edicts or acts

may fairly be said to represent official policy, inflicts the [constitutional deprivation.]"  Monell

v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).  Plaintiff

> must first prove the existence of a municipal policy or custom in order to show
> that the municipality took some action that caused his injuries beyond merely
> employing the misbehaving [City employee].  Second, the plaintiff must establish
> a causal connection – an "affirmative link" – between the policy and the
> deprivation of his constitutional rights.

Vippolis v. Village of Haverstraw, 768 F.2d 40, 44 (2d Cir. 1985).

Plaintiff alleges no DOE policy or custom that caused her alleged constitutional

deprivation.  Instead, Plaintiff contends that "a superintendent may be a final policymaker," and

that because Superintendent Rosales "'condoned Defendant Urena's hostile and retaliatory

behaviors towards Plaintiff,'" DOE may be held liable under Monell.  (Pltf. Opp. Br. (Dkt. No.

62) at 21 (quoting Am. Cmplt. (Dkt. No. 37) ¶ 11))  This bare allegation is not sufficient to make

out a Monell claim against DOE.  Accordingly, Defendants' motion to dismiss will be granted as

to Plaintiff's Section 1983 claim against DOE.

### B.    Section 1983 Claims Against Individual Defendants

> Where, as here, a plaintiff claims that he or she was retaliated against in violation of the
> First Amendment, he or she must plausibly allege that "(1) his [or her] speech or conduct
> was protected by the First Amendment; (2) the defendant took an adverse action against
> him [or her]; and (3) there was a causal connection between this adverse action and the
> protected speech."

Montero v. City of Yonkers, New York, 890 F.3d 386, 394 (2d Cir. 2018) (quoting Cox v. Warwick Valley Cent. Sch. Dist., 654 F.3d 267, 272 (2d Cir. 2011).

"[T]o determine whether a public employee's speech is constitutionally protected, courts must determine both that the employee spoke as a private citizen and that the speech at issue addressed a matter of public concern."  Montero, 890 F.3d at 393.

Speech by public employee union members concerning union activities and work-related matters presents difficult issues in the context of Section 1983 First Amendment retaliation claims.

In Montero, a Yonkers police officer and union official brought a Section 1983 First Amendment retaliation claim against, among others, supervisory Yonkers police officers, alleging that he had been retaliated against for comments made at union meetings criticizing the the Yonkers police commissioner.  Id. at 390.  The Second Circuit "decline[d] to decide categorically that when a person speaks in his capacity as a union member, he speaks as a private citizen . . . ."  Id. at 399.  The court concluded in that case, however, that the plaintiff "spoke as a private citizen . . . because . . . [he] spoke in his role as a union officer, and his union speech was not composed of statements made as a 'means to fulfill' or 'undertaken in the course of performing' his [job] responsibilities . . . ."  Id. (quoting Weintraub v. Bd. Of Educ., 593 F.3d 196, 203 (2d Cir. 2010)).  Stated another way, "because Montero's union remarks were not "'part-and-parcel of his concerns'" about his ability to "properly execute'" his official job duties," id. at 390 (quoting Weintraub, 593 F.3d at 203 (quoting Williams v. Dallas Indep. Sch., 480 F.3d 689, 694 (5th Cir. 2007))), "he spoke as a private citizen for purposes of his First Amendment right to free speech."  Id.  The court went on to conclude that two individual defendants were entitled to qualified immunity, however, in part because in Weintraub v. Bd. of Educ. the Second

Circuit had "plainly rejected the notion that one is necessarily speaking as a private citizen when acting in his or her union capacity." Id. at 403.

In Weintraub v. Bd. of Educ. – where "a public-school teacher filed a grievance through his union complaining about his school's failure to discipline a student who had assaulted him" – the Second Circuit concluded that "because Weintraub's grievance was pursuant to his official teaching duties, he did not speak as a private citizen." Id. at 393; see also Weintraub, 593 F.3d at 203 (concluding that "Weintraub's grievance was pursuant to his official duties because it was part-and-parcel of his concerns . . . as a public school teacher – namely, to maintain classroom discipline, which is an indispensable prerequisite to effective teaching and classroom learning") (citation and internal quotation marks omitted).

It is apparent that the application of Weintraub and Montero here would present school officials with very difficult issues. For example, are not Plaintiff's complaints about air conditioning, inadequate supplies, and security issues at the High School (see Am. Cmplt. (Dkt. No. 37) ¶ 69) "part-and-parcel of [her] concerns . . . as a public school teacher?" Moreover, Montero was issued after most of the adverse actions Plaintiff challenges had taken place.

The individual Defendants argue that – given the lack of clarity in the law – they are entitled to qualified immunity with respect to Plaintiff's Section 1983 First Amendment retaliation claim. (Def. Br. (Dkt. No. 59) at 22)

"Qualified immunity, an affirmative defense, shields officials from personal liability for civil damages [under Section 1983] so long as 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' '[T]he need for 'clearly established' law is satisfied if the law on the subject was defined at the time with reasonable clarity or clearly foreshadowed in rulings of the Supreme Court or the

Second Circuit, so that the defendant should have understood that her conduct was unlawful.'" Montero, 890 F.3d at 402 (2d Cir. 2018) (first quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); then quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

Defendants argue that, pursuant to Weintraub and Montero, "an individualized inquiry must be [conducted]," and that "the law was not clearly established at the time of any alleged conduct by Defendants toward Plaintiff, and is still not clearly established." (Def. Br. (Dkt. No. 59) at 25) In response, Plaintiff contends that her speech was not "'part-and-parcel of [her] concerns about [her] ability to properly execute [her] duties . . . .'" (Pltf. Opp. Br. (Dkt. No. 62) at 22 (quoting Montero, 890 F.3d at 398)) Plaintiff does not, however, address Defendants' argument that the law in this area is not clearly established, and that the necessary inquiry under Montero is inherently fact-intensive.

This Court concludes that the law in this area was not clearly established at the time of the conduct at issue. Accordingly, the individual Defendants are protected from liability on Plaintiff's Section 1983 First Amendment retaliation claim by qualified immunity.

## IV.   **NYCHRL CLAIMS**

The Amended Complaint alleges NYCHRL causes of action against the individual Defendants for disability discrimination, hostile work environment, and retaliation. (Am. Cmplt. (Dkt. No. 37) ¶¶ 73-74)

### A.   **Superintendent Rosales**

New York Education Law § 3813(1) provides:

No action or special proceeding, for any cause whatever . . . shall be prosecuted or maintained against any school district, board of education . . . or any officer of a school district, board of education . . . unless it shall appear by and as an allegation in the complaint . . . that a written verified claim upon which such action . . . is founded was presented to the governing body of said district or

school within three months after the accrual of such claim.

N.Y. Educ. Law § 3813 (McKinney)  "New York Education Law § 3813 requires a plaintiff to file a notice of claim prior to initiating a lawsuit against a school, school district, board of education, or education officer.  Superintendents qualify as officers upon whom a notice of claim must be filed, but principals do not."  Collins v. City of New York, 156 F. Supp. 3d 448, 460 (S.D.N.Y. 2016) (internal citations omitted).

The Amended Complaint does not allege that a notice of claim was filed as to Superintendent Rosales, and Plaintiff's counsel stated at a November 29, 2018 pre-motion conference that no such notice was filed.[9]  (Nov. 29, 2018 Tr. (Dkt. No. 50) at 4:20-22)

Plaintiff has submitted with her opposition brief an August 23, 2018 Receipt of Notice of Claim, however.  (Pltf. Opp., Ex. A (Dkt. No. 62-1))  Although the receipt does not reference Superintendent Rosales, Plaintiff contends in her brief that she "did in fact file a notice of claim against the Department of Education and Superintendent Rosales with the City Comptroller. . . ."  (Pltf. Opp. (Dkt. No. 62) at 13 (emphasis removed))

Defendants argue that Plaintiff should not be allowed to rely on the receipt because (1) no notice of claim is referenced in the Amended Complaint; and (2) judicial estoppel precludes Plaintiff from now arguing that she in fact filed a Notice of Claim, given counsel's representation to the contrary at the pre-motion conference.  (Def. Reply Br. (Dkt. No. 61) at 7-8)

Judicial estoppel applies where a party "(1) . . . advanced an inconsistent position in a prior proceeding, and (2) the inconsistent position [was] adopted by the court in some

_____

[9]  During the conference, the Court asked Plaintiff's counsel, "[i]s there a dispute about whether [P]laintiff filed the required Notice of Claim, Mr. Glass?"  Plaintiff's counsel responded:  "No, we didn't file in this case."  (Nov. 29, 2018 Tr. (Dkt. No. 50) at 4:20-22)

[manner]."  Peralta v. Vasquez, 467 F.3d 98, 105 (2d Cir. 2006).  Judicial estoppel is not applicable here, because the Court did not adopt any position advocated by Plaintiff's counsel.

The Amended Complaint does not plead compliance with the notice of claim requirement, however, and Plaintiff's attachment of the receipt to her opposition brief does not satisfy the pleading requirement.  "'[F]ailure to plead compliance with a notice of claim requirement constitutes a defect warranting dismissal of a complaint on the ground that it fails to state a cause of action.'"  Belpasso v. City of New York, No. 07-CIV-3627 SHS DCF, 2008 WL 2676579, at *6 (S.D.N.Y. July 2, 2008) (quoting Jeshurin v. Liberty Lines Transit, Inc., 191 A.D.2d 412, 414 (2d Dep't 1993)); see also Parker v. Zugibe, No. 16-CV-4265 (KMK), 2017 WL 4296795, at *7 (S.D.N.Y. Sept. 26, 2017) ("Plaintiffs are required to plead compliance with [notice of claim requirements] in their complaints."); Williams v. Geiger, No. 18 CIV. 01398 (SLC), 2020 WL 1304397, at *13 (S.D.N.Y. Mar. 19, 2020) ("A plaintiff must plead and prove that she has filed a timely notice of claim, or risk dismissal of the claim.")  Accordingly, Plaintiff's NYCHRL claims against Superintendent Rosales will be dismissed.[10]

## B.   Other Individual Defendants

### 1.   Disability Discrimination

"'To state a claim for [disability] discrimination under the NYCHRL, a plaintiff must only show differential treatment of any degree based on a discriminatory motive.'" Wellington v. Spencer-Edwards, No. 16 CIV 6238 (AT) (JLC), 2017 WL 11512684, at *7 (S.D.N.Y. Sept. 28, 2017) (quoting Gorokhovsky v. N.Y.C. Hous. Auth., 552 F. App'x 100, 102 (2d Cir. 2014)).  However, as the Wellington court observed, "[e]ven under this minimal standard, a plaintiff must plausibly allege that . . . she was subjected to unequal treatment

---

[10]  Plaintiff's NYSHRL claims against Superintendent Rosales are subject to the same notice of claim requirement, and they will be dismissed for the same reason.

because of her protected characteristic." Id. (citing Mihalik v. Credit Agricole Cheuvreux N.Am., Inc., 715 F.3d 102, 110 (2d Cir. 2013)); see also Harris v. NYU Langone Med. Ctr., No. 12 CIV. 0454 RA JLC, 2013 WL 3487032, at *15 (S.D.N.Y. July 9, 2013), report and recommendation adopted as modified, No. 12 CIV. 0454 RA, 2013 WL 5425336 (S.D.N.Y. Sept. 27, 2013) ("While [plaintiff] properly pleads that she is a member of a protected class . . . , that she was qualified for her position . . . , and that she suffered an adverse employment action in being terminated, she fails to allege any connection between her termination and [d]efendants' allegedly [] discriminatory conduct.").

"In order to make such a showing, a plaintiff need only demonstrate that discrimination was 'one of the motivating factors for the defendant's conduct,' not that discrimination was the 'but-for' cause of the plaintiff's differential treatment." Forrester v. Corizon Health, Inc., 278 F. Supp. 3d 618, 626 (E.D.N.Y. 2017), aff'd, 752 F. App'x 64 (2d Cir. 2018) (quoting Williams v. New York City Housing Authority, 61 A.D.3d 62, 78 n.27 (1st Dept. 2009)).

Here, the Amended Complaint pleads no facts showing that the alleged adverse actions were, even in part, "because of" or "based on" Plaintiff's disability, or that her disability was a "motivating factor" for these actions. Instead, the Amended Complaint and Plaintiff's opposition brief merely cite the timing of the alleged adverse actions in relation to Plaintiff's accommodation requests. (Pltf. Opp. Br. (Dkt. No. 62) at 18-19) Accordingly, Plaintiff's NYCHRL claim for disability discrimination against Defendants Urena, Perez, and Assistant Principal Rosales will be dismissed.

### 2.   Hostile Work Environment

"[A] 'hostile work environment' for purposes of the NYCHRL is one where there is 'differential treatment' period.  In other words, all that is required to sustain a NYCHRL 'hostile work environment claim' is 'unequal treatment' based upon membership in a protected class."  Fattoruso v. Hilton Grand Vacations Co., 873 F.Supp.2d 569, 578 (S.D.N.Y. 2012) (citing Williams, 61 A.D.3d at 77); see also Nieblas-Love v. New York City Hous. Auth., 165 F. Supp. 3d 51, 68 (S.D.N.Y. 2016) (dismissing NYCHRL claim where plaintiff "offer[ed] nothing but bare speculation to link [differential treatment] to any discriminatory (or retaliatory) motive or intent").  "[A] plaintiff must show that she was 'treated "less well"' because of discriminatory intent."  Watkins v. New York City Transit Auth., No. 16 CIV. 4161 (ER), 2020 WL 1888839, at *12 (S.D.N.Y. Apr. 16, 2020) (quoting Colon v. Fashion Inst. of Tech. (State Univ. of New York), 983 F. Supp. 2d 277, 292 (S.D.N.Y. 2013) (quoting Mihalik, 715 F.3d at 110)).

Here, the Amended Complaint does not plead facts demonstrating that Plaintiff was treated "less well because of discriminatory intent" or "based upon membership in a protected class."  Plaintiff's opposition brief makes clear that her hostile work environment claim is premised on the same actions underlying her failure to accommodate claim; rather than alleging causality, Plaintiff merely recounts the timing of these actions.  (Pltf. Opp. Br. (Dkt. No. 62) at 17-19)  Plaintiff's failure to plead causation is fatal to her hostile work environment claim. Accordingly, Plaintiff's NYCHRL hostile work environment claim against Defendants Urena, Perez, and Assistant Principal Rosales will be dismissed.

### 3.   Retaliation

"[T]o prevail on a retaliation claim under the NYCHRL, the plaintiff must show that she took an action opposing her employer's discrimination, and that, as a result, the

employer engaged in conduct that was reasonably likely to deter a person from engaging in such action."  Milhalik, 715 F.3d at 112 (citing Albunio v. City of New York, 16 N.Y.3d 472, 479 (2011); Williams, 61 A.D. 3d at 69-70).  "An adverse action is one that 'well might have dissuaded a reasonable [person] from making or supporting a charge of discrimination.'"  Smith, 2016 WL 4574924, at *10.

   Here, Plaintiff alleges adverse actions that occurred within two to three months of her 2016 requests for accommodation and her March 15, 2018 filing of an EEOC complaint. With respect to Urena, Plaintiff alleges that she received disciplinary letters on November 5, 2016 and November 17, 2016, within two months of her request for communications to be in writing.  (Am. Cmplt. (Dkt. No. 37) ¶¶ 29-30)  With respect to Perez, Plaintiff alleges that she received a disciplinary letter on June 22, 2018, approximately three months after she filed her EEOC complaint.  (Id. ¶¶ 55-56)  Finally, with respect to Assistant Principal Rosales, Plaintiff alleges that she received a disciplinary letter on May 2, 2018, less than three months after she filed her EEOC complaint.  (Id. ¶ 54)  Each of these adverse actions occurred close enough in time to protected activity to support an inference of retaliation.

   Accordingly, Defendants' motion to dismiss Plaintiff's NYCHRL retaliation claim against Defendants Urena, Perez, and Assistant Principal Rosales will be denied.

*  *  *  *

   To summarize, the following claims will be dismissed:  the ADA claims for denial of reasonable accommodation and hostile work environment against DOE; the NYSHRL and NYCHRL claims of disability discrimination and hostile work environment; the Section 1983 First Amendment claims; and all claims against Superintendent Rosales.  The following claims survive Defendants' motion to dismiss:  the ADA claim of retaliation against DOE, and

the NYSHRL and NYCHRL claims of retaliation against Urena, Perez, and Assistant Principal Rosales.

## **CONCLUSION**

For the reasons stated above, Defendants' motion to dismiss is granted in part and denied in part. The Clerk of Court is directed to terminate Defendant Marisol Rosales and terminate the motions (Dkt. Nos. 57, 81).

Defendants are directed to submit a letter by **May 19, 2020** stating whether, in light of this Order, they intend to move for summary judgment and, if so, why they believe that such a motion would be well-founded. Plaintiff will respond to any such letter by **May 26, 2020.**

Dated: New York, New York
    May 12, 2020

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge